IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FREEMANVILLE WATER SYSTEM, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  CIVIL ACTION 07-0688-WS-M ) |
| POARCH BAND OF CREEK INDIANS, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER

This matter is before the Court on the defendants' motion to dismiss on the grounds of tribal sovereign immunity. (Doc. 13). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 14, 16, 17), and the motion is ripe for resolution. After carefully considering the foregoing and other relevant material in the file, the Court concludes that the motion to dismiss is due to be granted.

## BACKGROUND

According to the complaint, the plaintiff operates a water system servicing various rural parts of Escambia County, Alabama. The defendants are the Poarch Band of Creek Indians ("the Tribe"), Creek Indian Enterprises ("Enterprises"), and P.C.I. Gaming ("Gaming"), with Enterprises and Gaming being wholly owned by the Tribe and chartered under its tribal laws. The plaintiff supplies water to the Tribe's various non-contiguous lands in Escambia County. The defendants intend to construct a water treatment distribution facility on tribal lands and to deliver water to non-contiguous tribal lands through their own distribution network within the plaintiff's service area. The complaint asserts that this threatened conduct will violate the Consolidated Farm and Rural Development Act ("the Act"), in particular, the anti-curtailment provision found in

7 U.S.C. § 1926(b). The plaintiff seeks declaratory and injunctive relief barring the construction of the facilities on or between tribal lands. (Doc. 1).

The defendants move to dismiss under Rule 12(b)(1) on the grounds of tribal sovereign immunity. The plaintiff argues: (1) that Congress has abrogated the defendants' immunity; (2) that the defendants have waived immunity; and (3) that immunity does not extend to the defendants' conduct off tribal land or land managed in trust by the Bureau of Indian Affairs.[1]

## DISCUSSION

The existence of tribal immunity deprives a court of subject matter jurisdiction. *Taylor v. Alabama Intertribal Council Title IV J.T.P.A.*, 261 F.3d 1032, 1034 (11th Cir. 2001). Because the defendants' attack is factual rather than facial (since it assumes the accuracy of the facts alleged in the complaint), the parties may submit evidence, and the Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Morrison v. Amway Corp.*, 323 F.3d 920, 924-25 & n.5 (11th Cir. 2003) (internal quotes omitted).

**A. Abrogation.**

"To abrogate tribal immunity, Congress must unequivocally express that purpose." *C&L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001) (internal quotes omitted). More precisely, "Congress may abrogate a [tribal] sovereign's immunity only by using statutory language that makes its intention unmistakably clear," and "[c]itations to legislative history or inferences from general

---

[1] The defendants' evidence confirms the complaint's allegation that Enterprises and Gaming are wholly owned by the Tribe and chartered under its laws. (Doc. 17, Exhibit 1). The plaintiff concedes that these entities share equally in the Tribe's sovereign immunity. (Doc. 16 at 2 ("Defendants are a federally recognized Indian tribe ...."); *id.* at 5-6).

statutory language are insufficient bases for a finding of congressional abrogation." *Florida v. Seminole Tribe*, 181 F.3d 1237, 1242 & n.7 (11th Cir. 1999); *accord Florida Paraplegic Association v. Miccosukee Tribe*, 166 F.3d 1126, 1131 (11th Cir. 1999). Thus, "Congress abrogates tribal immunity only where the definitive language of the statute itself states an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act." *Id*.

> The statute under which the plaintiff sues reads in pertinent part as follows:
>
>> The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan ....

7 U.S.C. § 1926(b). The plaintiff argues that the defendants constitute a "public body" under this section, such that they are "subject to" the anti-curtailment provision and "must comply" with it. (Doc. 16 at 5-6). There are at least two fatal defects with this argument.

First, the term "public body" is not defined for purposes of Section 1926(b), leaving it ambiguous as to whether it extends to Indian tribes. The plaintiff points to three other provisions of the Act that parenthetically include Indian tribes in the definition of a "public body" or "public agency,"[2] but those definitions do not purport to bleed over to Section 1926(b). Indeed, the express inclusion of Indian tribes in the definition of a public body in other sections implies that Indian tribes are not within the scope of that term unless expressly defined to be so.

Second, even if an Indian tribe constitutes a public body under Section 1926(b), that establishes at most that a tribe is obligated to comply with its anti-curtailment provision; it does not suggest that a tribe may be sued for violation of the provision. On the contrary, "whether an Indian tribe is *subject* to a statute and whether the tribe may be *sued* for violating the statute are two entirely different questions." *Miccosukee Tribe*, 166

---

[2]*See* 7 U.S.C. § 1926(a)(13); *id*. § 1927(a)(3)(A); *id*. § 1992.

F.3d at 1130 (emphasis in original).  Without a showing that Congress expressly and unequivocally abrogated tribal immunity for violations of Section 1926(b), a showing that tribes are required to comply with that section is irrelevant.

The plaintiff discusses at length a number of cases holding that Congress may abrogate tribal immunity by including "Indian tribes" in a list of entities that may be sued. (Doc. 16 at 6-9).  Congress, however, has done no such thing with respect to Section 1926(b).

**B.  Waiver.**

"It is settled that a waiver of [tribal] sovereign immunity cannot be implied but must be unequivocally expressed."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (internal quotes omitted); *accord Seminole Tribe*, 181 F.3d at 1243.  The plaintiff nevertheless argues that the defendants waived immunity by receiving a HUD grant to build housing and by the plaintiff's expenditures, financed by loans under the Act, to service the new housing development.  In conjunction therewith, says the plaintiff, the defendants "extend[ed] the promises and commitments necessary to receive and accept" the HUD funding and water services and thereby waived any claim of tribal immunity. (Doc. 16 at 10-11).

The threshold difficulty with the plaintiff's argument is that it is not supported by the evidence.  With respect to the HUD grant, the plaintiff's submission consists entirely of two 1987 newspaper snippets simply confirming the award.  With respect to the plaintiff's expansion, the submission consists entirely of a 1987 preliminary engineering report prepared for the plaintiff by a third party, which notes the Tribe's plans to expand housing and build an elevated water storage tank with its HUD grant and expresses optimism (based in part on those plans) that the plaintiff's own proposed expansion would be a success, financially and otherwise.  (Doc. 16, Exhibit 3).  Nothing in these documents reflects any "promise" or "commitment" made by the defendants, and

certainly not one surviving some 20 years later.

Shorn of any promise or commitment, "waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions ...." *Seminole Tribe*, 181 F.3d at 1243. Even a failure to live up to a promise or commitment (had one been shown) would not strip the defendants of their immunity. If it did, immunity would never apply to a claim for breach of contract, while in fact "[t]ribes enjoy immunity from suits on contracts ...." *Kiowa Tribe v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 760 (1998).

## C. Off-Reservation Conduct.

The plaintiff asserts that the defendants' immunity "does not go beyond tribal lands," leaving them exposed to suit with respect to that portion of the water distribution infrastructure they allegedly plan to install between non-contiguous tracts of tribal land. (Doc. 16 at 11-12). But even if the Act applies to tribes operating off tribal lands, "[t]o say substantive [federal] laws apply to off-reservation conduct ... is not to say that a tribe no longer enjoys immunity to suit," because "[t]here is a difference between the right to demand compliance with [federal] laws and the means available to enforce them." *Kiowa Tribe*, 523 U.S. at 755.

The *Kiowa Tribe* Court noted that, "[t]o date, our cases have sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred," and it "declined to revisit [this] case law." *Id.* at 754, 760. Thus, a tribe cannot be sued for breach of a commercial contract even if the contract was entered (or payments were to be made) off tribal lands. *Id.* at 754, 760. The breadth of the tribal immunity doctrine inherited and passed on by the *Kiowa Tribe* Court is difficult to overstate, with the majority conceding that it dooms innocent tort victims, *id.* at 758, and the dissent describing the doctrine as "virtually unlimited." *Id.* at 764 (Stevens, J., dissenting). And this is the situation in the commercial context, *id.* at 760; the reach of tribal immunity in the pursuit of governmental activity (as establishing a tribal water

system presumably would be) can be no narrower.  *See id.* at 754-55, 760 (declining to distinguish between commercial and governmental activities).

  The plaintiff gamely but futilely battles this devastating precedent, suggesting that *Kiowa Tribe* is limited to suits for damages and has no application to suits seeking equitable relief.  (Doc. 16 at 13).  The plaintiff offers no precedent for this proposition, and it is contradicted by *Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165 (1977), in which the Supreme Court agreed that an injunction enforcing fishing limits on the tribe, on and off its tribal lands, violated the tribe's immunity.  *Id.* at 172-73, *discussed in  Kiowa Tribe*, 523 U.S. at 762-63 (Stevens, J., dissenting).

  Finally, the plaintiff complains that the regime accepted in *Kiowa Tribe* is illogical and unfair.  (Doc. 16 at 12).  Even the majority acknowledged that "[t]here are reasons to doubt the wisdom of perpetuating the doctrine" of tribal immunity, given its apparent logical and equitable infirmities, but it "ch[o]se to defer to Congress."  523 U.S. at 758, 760.  In the decade since, Congress has not acted.  The Court, like the Eleventh Circuit before it, "decline[s] to modify the doctrine of tribal sovereign immunity absent an express command to the contrary from either Congress or a majority of the Supreme Court."  *Seminole Tribe*, 181 F.3d at 1245.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is **granted**.

DONE and ORDERED this 7th day of January, 2008.

            s/ WILLIAM H. STEELE
            UNITED STATES DISTRICT JUDGE